IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLY M.,[1] | ) |
|       Plaintiff, | ) |
| v. | ) No. 20 C 2995 |
| KILOLO KIJAKAZI, | ) Magistrate Judge Beth W. Jantz |
| Acting Commissioner of Social Security,[2] | ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Carly M.'s application for child's insurance benefits and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 19, Pl.'s Mot.] is granted in part. The Court reverses and remands the decision of the Commissioner for further proceedings.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I. Procedural History

On August 31, 2015, Plaintiff filed a claim for SSI, alleging disability since September 10, 2010, due to bipolar disorder, anxiety, depression, and irritable bowel syndrome ("IBS"). [Dkt. 18-2, R. 115.] Plaintiff's claim was denied initially and again upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [R. 126, 146.] On December 8, 2017, Plaintiff then filed a claim for child's insurance benefits,[3] which was escalated to the hearing level. [R. 326.] The hearing before the ALJ on both claims was held on March 22, 2018. [R. 49-101.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 49, 55-88.] Medical expert ("ME") Dr. Michael Cremerius and vocational expert ("VE") Leida Woodham also testified. [R. 88-100.] On May 10, 2018, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 20-39.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

### II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 17-27.] The ALJ found at step one that Plaintiff had not attained the age of 22 by and had not engaged in substantial gainful activity since her alleged onset date of September 10, 2010. [R. 22-23.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, irritable bowel syndrome, and fibromyalgia. [R. 23.] The ALJ concluded at

---

[3] These benefits are available if the claimant is 18 years old or older and has a disability that began before attaining the age of 22. 20 C.F.R. § 404.350(a)(5).

2

step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 23-27.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can understand, remember, and carry out simple, routine tasks, make simple work-related decisions, and adapt to routine workplace changes; and she can work in proximity to others, including handling occasional interaction with supervisors and co-workers and brief and incidental contact with the general public. [R. 27-37.] At step four, the ALJ concluded that Plaintiff did not have any past relevant work. [R. 37.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 37-38.]

## DISCUSSION

### I.     Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the

3

claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id*.

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id*. at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837.

Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

In asking for a remand for a direct award of benefits, Plaintiff raises two overarching arguments: (1) that the ALJ improperly weighed the medical opinions concerning her mental RFC, and (2) that the ALJ erred in finding Plaintiff's subjective symptom statements ". . .out of proportion with the symptoms, signs[,] and limitations demonstrated in the record." [Dkt. 20, Pl.'s Mem. at 8-15 (alteration in original); *see also* dkt. 26, Pl.'s Reply at 1-4.] The Commissioner responds that the ALJ appropriately explained her reasons for assigning the weight she did to the doctors' opinions, and that the ALJ's finding at step three that Plaintiff did not meet a Listing was supported by substantial evidence overall. [Dkt. 25, Def.'s Resp. at 2-11.] And the Commissioner argues that the ALJ properly evaluated Plaintiff's subjective symptom statements, and substantial evidence supported her ultimate RFC determination. [*Id.* at 11-13.] Finally, the Commissioner argues that if the Court does find Plaintiff's arguments warrant remand, the appropriate remedy is a remand for further proceedings, not an award of benefits. [*Id.* at 13-14.]

5

After reviewing the record and the briefs submitted by the parties, this Court agrees with Plaintiff that the ALJ erred in weighing the medical opinions when determining Plaintiff's mental RFC and that remand therefore is warranted, but the Court declines to direct an award of benefits. Further, because the failure to properly weigh the doctors' opinions alone warrants remand, the Court does not separately address Plaintiff's other arguments.

**A. The ALJ erred in weighing the medical opinions regarding Plaintiff's mental RFC.**

The ALJ must evaluate "every medical opinion" in the record and assign a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.[4] 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Generally, more weight is given to the opinions of treating physicians because they are most familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(c); *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). Accordingly, the ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted). If a treating physician's opinion is not given controlling weight, the ALJ must then determine what weight the assessment merits. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). In that instance, the ALJ evaluates all medical opinions according to the following factors: (1) whether there was an examining or treating relationship;

---

[4] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). As the Commissioner notes, Plaintiff's application for SSI was filed in 2015, and it remained open when she filed her application for child's insurance benefits in December 2017, and so the treating-physician rule still applies to both claims here. [Def.'s Mem. at 6 n.2.]

6

(2) the length, nature, and extent of the treatment relationship; (3) the frequency of examination; (4) the consistency and supportability of the physician's opinion; and (5) the physician's specialty. 20 C.F.R. § 404.1527(c). Here, two treating physicians opined about Plaintiff's mental RFC and three non-treating physicians also rendered opinions, which the Court addresses in turn.

### 1. Dr. Syed Amanullah

Dr. Syed Amanullah, a psychiatrist at the Institute for Personal Development, rendered multiple opinions on forms that covered many areas of Plaintiff's mental functional abilities, and the Court recounts only the most salient information from those opinions. [*See* R. 934-42; 1156-61; 1162-76.] In a mental RFC questionnaire dated March 15, 2016, Dr. Amanullah reported that he started seeing Plaintiff for monthly visits that lasted 30 minutes each in October 2014. [R. 935.] He explained that although Plaintiff had tried many medications and psychotherapy, she still suffered from "extreme anxiety, mood swings and thoughts of hopelessness." [*Id.*] He opined that Plaintiff's ability to interact appropriately with the general public, maintain appropriate behavior, and adhere to basic standards of neatness were seriously limited because she had "extreme anxiety around others," was "unable to cope with stress," and would "shut down if criticized." [R. 937.] Dr. Amanullah also opined that she would miss more than 4 days of work a month because of her impairments. [R. 940.]

On May 24, 2017, Dr. Amanullah completed another mental RFC questionnaire (on a different form), reporting that he now saw Plaintiff every 6-8 weeks for 30-minute visits.[5] [R. 1157.] According to Dr. Amanullah, Plaintiff continued "to struggle with depression and

---

[5] Although the form appears to have been filled out by Dr. Amanullah, it was also signed by Dr. Scavo. [*See* R. 1161.] As Plaintiff does not argue it should be considered Dr. Scavo's opinion, however, the Court does not again address it in the section concerning Dr. Scavo.

7

anxiety" and "minor stress [for her] leads to emotional breakdowns and self-destructive behavior." [*Id.*] Dr. Amanullah opined that Plaintiff would have a greater than 20% of the workday impairment (the highest impairment level) in several areas, including maintaining regular attendance, performing at a consistent pace without unreasonable rest periods, accepting instructions and responding to criticism from supervisors, and getting along with co-workers or peers. [R. 1159.] Again, Dr. Amanullah opined that Plaintiff would miss more than 4 days of work every month. [R. 1161.]

On June 7, 2017, Dr. Amanullah also filled out an agency form entitled "psychiatric review technique," in which he concluded that Plaintiff met the criteria for Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). [R. 1163, 1166, 1168.] Additionally, Dr. Amanullah opined that Plaintiff would have a mild limitation in understanding, remembering, and applying information, an extreme limitation in interacting with others, a marked limitation in concentrating, persisting, or maintaining pace, and a marked limitation in adapting or managing herself. [R. 1175.]

The ALJ assigned "little weight" to treating psychiatrist Dr. Amanullah's opinions. [R. 35.] First, the ALJ discounted the nature and extent of the treating relationship and the frequency of examination by explaining that "the evidence shows that he only sees [Plaintiff] periodically and briefly for medication management services and not as often as alleged." [*Id.*] *See* 20 C.F.R. § 404.1527(c)(i), (ii). But the ALJ is factually incorrect about the frequency of visits. Dr. Amanullah reported initially in 2015 that he saw Plaintiff monthly, which switched to every 6 to 8 weeks by the time of his opinions in 2017. [R. 935, 1157.] And indeed, the treatment notes reflect regular visits just as he reported. [*See* R. 620, 625, 632, 635, 638, 641, 644, 651, 657, 662, 847, 852, 854, 948, 956, 963, 1036, 1045, 1052, 1059, 1064 1067, 1075,

8

1081, 1204, 1210, 1221.][6] Over the course of the 2.5 years before he rendered his last opinion, from October 2014 to June 2017, it appears that Dr. Amanullah saw Plaintiff on about 25 occasions, which averages to one visit about every month or month and a half. [*See id.*] Thus, the ALJ's reasoning in this respect cannot be considered sound and is not a "good reason" to discount Dr. Amanullah's opinion. *Scott*, 647 F.3d at 739.

Next, the ALJ did not address the length of the treating relationship. *See* 20 C.F.R. §404.1527(c)(i). Generally, the longer a treating source has treated a plaintiff and the more times a treating source has seen a plaintiff, "the more weight" the ALJ will give the source's medical opinion. *Id.* As previously outlined, Dr. Amanullah saw Plaintiff on a near-monthly basis over the course of 2.5 years, amounting to 25 visits during that time. The ALJ did not acknowledge this substantial treating relationship when determining that Dr. Amanullah's opinion warranted "little weight." [*See* R. 35.]

Third, the ALJ highlighted numerous purported issues with respect to the supportability and consistency of Dr. Amanullah's opinions. [R. 35.] *See* 20 C.F.R. § 404.1527(c)(3, 4). The ALJ stated that Dr. Amanullah's treatment records did not document his comment that Plaintiff has "extreme anxiety with others." [R. 35.] But in his very first treatment note, Dr. Amanullah reported that Plaintiff's anxiety was "bad around a group of people," [R. 641], and it is not clear whether the ALJ is faulting Dr. Amanullah for not reporting *objective signs* of anxiousness during office visits, of which in any case there are multiple examples of Plaintiff's mood being reported as "anxious" in his colleague Dr. Scavo's treatment notes, [*see, e.g.,* R. 946, 1197-1201,

---

[6] The visit dates, in chronological order, are as follows: 10/15/14, 11/13/14, 1/9/15, 2/12/15, 2/20/15, 3/13/15, 4/2/15, 4/10/15, 5/7/15, 7/6/15, 8/20/15, 9/3/15, 9/30/15, 12/10/15, 2/4/16, 3/15/16, 5/31/16, 7/7/16, 8/24/16, 9/6/16, 10/4/16, 11/22/16, 1/16/17, 2/28/17, 6/7/17, 8/8/17, and 9/5/17.

1568]. The ALJ also mentioned that Dr. Amanullah had not addressed how Plaintiff had been able "to travel out of the state so regularly" despite her symptoms and limitations nor how she was "able to secure marijuana illicitly from dealers prior to obtaining a medical marijuana card," both of which the ALJ repeatedly emphasized throughout her opinion. [R. 35; *see* R. 26, 32-33.] Not specifically discussing these facts, however, hardly renders unpersuasive Dr. Amanullah's opinions about the limitations Plaintiff would face in doing work; Plaintiff's ability to go on vacation and to obtain marijuana from a dealer does not equate to an ability to maintain a job or necessarily undermine the anxiety and stress Dr. Amanullah opined she would feel at work. *See Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014); *Hughes v. Astrue,* 705 F. 3d 276 (7th Cir. 2013).

In any event, the primary reason the ALJ assigned Dr. Amanullah's opinion little weight appears to be that his treatment notes reflected Plaintiff "to be stable with essentially normal findings on examination and show that [Plaintiff] has been doing well." [R. 35.] And the ALJ thought that those "normal" findings were corroborated by (1) other mental status examinations in the record that "have been generally benign," and thus do not support "the severe symptoms and functional" limitations Dr. Amanullah assessed, and (2) Plaintiff's lack of emergency care or hospitalization for her conditions. [*Id.*] In citing to the record in support of these facts, the ALJ references 7 pages of records, each with a mental status examination (none of which are Dr. Amanullah's treatment notes). [*See* R. 35 (citing R. 946, 947, 950, 955, 958, 1201, 1568, 1819).] Although those notes are reflective of those in the wider record and do largely report that Plaintiff had good insight and judgment, that her memory and concentration were intact, and that her thoughts were linear and goal-directed, it is not clear why the ALJ believed those findings during visits with mental-health professionals were inconsistent with Dr. Amanullah's

opinions and reports that, among other things, Plaintiff struggled with extreme anxiety around others, had mood swings, would not respond well to stress or criticism, and would need to miss more than 4 days of work a month. [*See* R. 934-42; 1156-61; 1162-76.] Indeed, all of the records cited by the ALJ contain reports that Plaintiff was struggling with her mood—it is described as either anxious, tired, depressed, or irritable. [R. 946, 947, 950, 955, 958, 1201, 1567-68, 1819.] Additionally, Dr. Amanullah's ongoing treatment of Plaintiff belies the ALJ's assessment that Plaintiff was "stable" and "doing well"; Dr. Amanullah frequently adjusted Plaintiff's medications in an attempt to improve management of her ongoing symptoms. [*See* R. 620-21, 632-33, 638-39, 641-42, 644-45, 651-52, 948-49, 1036-37, 1045-46, 1081-82.]

      Overall, the problem with the ALJ's assessment of the supportability and consistency of Dr. Amanullah's opinions is a broader discounting across the ALJ's decision of Plaintiff's depression and anxiety. The ALJ's review of the treatment notes focuses on Plaintiff's mental state during structured sessions and the activities of daily living that she participates in when she feels well enough. [*See* R. 30-37.] As a general matter, however, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Even if Plaintiff would be able to work on some days, that does not necessarily mean she would be able to perform and maintain full-time employment. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Thus, the ALJ's conclusions that Dr. Amanullah's opinions are not supported by the "benign" mental status exams and Plaintiff's "stable" state, [R. 35], are not supported by substantial evidence in the record.

11

### 2. Dr. Corrin Scavo

Dr. Corrin Scavo, a licensed clinical psychologist at the Institute for Personal Development, wrote a letter dated September 28, 2017, that stated that she had been seeing Plaintiff as a patient for about 3 years, since September 18, 2014. [R. 1178.] Dr. Scavo explained that Plaintiff had been unable to work since Dr. Scavo had known her, and although "the progress notes appear to demonstrate improvement in some of her symptoms," it had not been significant enough to allow her to "be functional at employment"; Plaintiff had been "unable to decrease her symptoms, especially her anxiety, enough to be an effective employee." [*Id.*] When she had tried to unsuccessfully to seek out employment, there were frequent absences because of medical issues and "overwhelming anxiety which caused panic attacks." [*Id.*] Plaintiff then experienced "significant distress and depression" when she did not follow through on tasks that she thought she should be able to do. [*Id.*] Recognizing that Plaintiff "would be unable to make it on her own" without the "financial help of her parents," Dr. Scavo concluded that "[i]t would be beneficial for [Plaintiff] to receive disability to allow her to be able to focus on her recovery and her overall health." [*Id.*]

The ALJ gave "no weight" to treating psychologist Dr. Scavo's September 2017 opinion for three reasons. The ALJ acknowledged that Dr. Scavo was a licensed clinical psychologist but explained that Dr. Scavo's opinion contained "very general statements" and mostly related to the ultimate question of whether Plaintiff was able to work, which is an issue that is reserved for the Commissioner to decide. [R. 35-36.] The ALJ was correct that she need not give any weight to Dr. Scavo's assertion that Plaintiff was unable to work, *see* 20 C.F.R. § 1527(e)(1), however, Dr. Scavo's opinion also commented on Plaintiff's frequent work absences due to panic attacks and medical issues and her increased depression after unsuccessful work attempts, [R. 1178],

12

which the ALJ could not just immediately disregard without weighing. *See* 20 C.F.R. § 1527(c), (d)(1); *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). At most, the ALJ addressed these opinions by saying that Dr. Scavo's notes also reflected "repeatedly normal and stable findings on exam." [R. 36.] But again, for the reasons described when discussing the supportability and consistency of Dr. Amanullah's opinion, these findings are not necessarily inconsistent with Dr. Scavo's assertion that, despite the improved progress notes, Plaintiff's anxiety is still too severe to sustain full-time work. [R. 1178.]

As to the length, frequency, extent, and nature of the treating relationship, the ALJ questioned whether Dr. Scavo "has completed any formal therapy" with Plaintiff—despite treating her since 2014—because Dr. Scavo opined that Plaintiff "needs a source of income so she can focus on her recovery and overall health," even though Plaintiff was supported by her parents throughout this period. [R. 35-36.] This query by the ALJ is puzzling. The record reflects an entire swath of treatment notes of therapy sessions with Dr. Scavo,[7] and the ALJ does not explain what she means by "formal therapy." [R. 35-36.] Further, the ALJ seemed to question the treating relationship because Dr. Scavo did not know that Plaintiff was financially supported by her parents, but this is a misreading of Dr. Scavo's letter. [*See* R. 35-36.] Dr. Scavo explicitly recognized that "[w]ithout the [ ] financial help of her parents, [Plaintiff] would be unable to make it on her own," *before* she opined that "it would be beneficial for [Plaintiff] to receive disability [benefits] to allow her to be able to focus on her recovery and her

---

[7] The following are Dr. Scavo's treatment notes: R. 615, 616, 617, 618, 619, 622, 623, 624, 627, 629, 631, 634, 637, 640, 643, 646, 647, 648, 649, 650, 653, 654, 656, 659, 660, 661, 664, 843, 845, 846, 849, 850, 851, 856, 946, 947, 950, 951, 952, 954, 955, 958, 959, 960, 961, 962, 965, 1034, 1035, 1039, 1040, 1041, 1042, 1043, 1044, 1047, 1048, 1049, 1051, 1054, 1055, 1056, 1057, 1058, 1061, 1062, 1063, 1065, 1066, 1069, 1070, 1072, 1074, 1077, 1078, 1080, 1083, 1084, 1085, 1086, 1088, 1089, 1197, 1198, 1199, 1200, 1201, 1202, 1203, 1206, 1207, 1208, 1212, 1213, 1214, 1215, 1216, 1218, 1219, 1220, 1224, 1225, 1226, 1228.

13

overall health." [R. 1178.] Thus, Dr. Scavo clearly knew the fact that the ALJ faulted her for not knowing, and it follows that her statement about Plaintiff receiving benefits was not based on a purely financial perspective. [*Id.*] The ALJ's questioning of Dr. Scavo's long-term, extensive treatment of Plaintiff on this basis therefore is unavailing. "The longer a treating source has treated [Plaintiff] and the more times you have been seen by a treating source, the more weight [the agency] will give to the source's medical opinion." 20 C.F.R. § 416.927(c)(2). Here, the ALJ failed to acknowledge just how extensive Dr. Scavo's treatment of Plaintiff was—about weekly sessions over the span of three years. *See supra* n.7. Accordingly, for all of these reasons, the ALJ did not adequately weigh Dr. Scavo's September 2017 opinion.

\* \* \* \* \*

In sum, the ALJ did not sufficiently address the regulatory factors in determining what weight to give Dr. Amanullah's and Dr. Scavo's opinions, and remand is warranted on this ground. *See* 20 C.F.R. § 404.1527(c).

### 3. Non-treating physicians

Although the ALJ's failure to give "good reasons" for weighing the treating physicians' opinions warrants remand on its own, the Court briefly addresses the ALJ's weighing of the ME's and state agency psychological consultants' opinions.

The ALJ afforded "some but limited weight" to the opinion of the independent ME who testified at the hearing, Dr. Michael Cremerius, and specifically rejected his conclusions that Plaintiff met Listing 12.06 (which concerns anxiety and obsessive-compulsive disorders) and that she had marked limitations in social functioning and concentrating, persisting, or maintaining pace. [R. 24, 36.] Although the ALJ noted that Dr. Cremerius opined that Plaintiff would be "unable to function due to panic attacks and symptoms related to [IBS]," the ALJ

14

seemingly found that opinion unpersuasive because "the record is not clear as to how much of [Plaintiff's] poor functioning is due to poor motivation versus her mental disorders." [R. 24.] The ALJ again relied on the same benign mental status examinations that she focused on in discounting Dr. Amanullah's and Dr. Scavo's opinions, [R. 24 (citing R. 946, 947, 950, 955, 958, 1201, 1568, 1819)], and Plaintiff's activities of daily living to grant Dr. Cremerius's opinion only "some but limited weight." [R. 24-25, 36.]

In contrast, the ALJ assigned "significant weight" to consulting physician Dr. Richard Hamersma's opinion from May 31, 2016, that Plaintiff had mild to moderate mental functional limitations. [R. 36.] The ALJ explained that Dr. Hamersma's opinion was in his specialty area and "well reasoned and largely [relied] on the evidence of record." [*Id.*] And the ALJ gave "significant weight" to psychiatric medical consultant Dr. Russell Taylor's opinion at the initial level as to Plaintiff's functional abilities. [*Id.*] In assigning these opinions significant weight, the ALJ noted that Plaintiff's mental conditions have not worsened since their opinions. [*Id.*] When considering whether Plaintiff met a Listing, the ALJ said that the state agency consultants and Dr. Cremerius had "reviewed the same evidence." [R. 24.]

The ALJ committed many of the same flaws in her reasoning in weighing these doctors' opinions as that for the treating physicians, repeatedly relying on some stable findings in order to credit the state agency doctors' opinions over that of Dr. Cremerius and the treating physicians. [R. 35-36.] Additionally, the ALJ seemed to think that Dr. Cremerius and the state agency consultants had reached different conclusions based on the same evidence. [R. 24, 35-36.] But Dr. Cremerius actually considered more evidence: in addition to reviewing the record, Dr. Cremerius attended the March 2018 hearing and therefore was able to consider Plaintiff's testimony in rendering his opinion, as well. [*See* R. 49-101.] Accordingly, the ALJ should also

15

reevaluate on remand the opinions of the non-treating physicians, in accordance with 20 C.F.R. § 1527(c).

### B. The Court declines to remand for an award of benefits.

Plaintiff asks the Court to remand this case to the Commissioner for an award of benefits, maintaining that once Dr. Amanullah's and Dr. Scavo's opinions receive controlling weight pursuant to the treating-physician rule, the record supports no other finding but that Plaintiff is disabled. [Pl.'s Mem. at 15; Pl.'s Reply at 1-2.] But "[t]hat remedy is a marked departure from our typical practice of remanding to the agency for further proceedings." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020). "[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356.

The Court is not concluding here that these opinions of the treating physicians are indeed entitled to controlling weight; rather, the Court merely finds that it was error for the ALJ not to weigh these opinions in accordance with the Social Security regulations. *See* 20 C.F.R. § 404.1527(c). It will be for the ALJ to decide on remand what weight to give to all of the doctors' opinions after consideration of the enumerated factors. *See, e.g., Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011) (declining to award benefits where district court remanded for further consideration of treating physician's opinion). Because a finding of disability is not compelled at this stage, the Court determines that an award of benefits is not warranted at this point, and instead remands for further proceedings.

16

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 19] is granted in part. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: June 22, 2022

BETH W. JANTZ
United States Magistrate Judge